# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

BRIAN HARTLEY,

           Plaintiff,

v.                                                    Case No. 3:20-cv-1266-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,[1]

           Defendant.

_____

## OPINION AND ORDER[2]

### I.   Status

     Brian Hartley ("Plaintiff") is appealing the Commissioner of the Social

Security Administration's ("SSA('s)") final decision denying his claim for

disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the

result of "[a]cute migraine headaches." Transcript of Administrative

Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed May 6,

---

[1]     Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed May 6, 2021; Reference Order (Doc. No. 16), entered May 11, 2021.

2021, at 49. Plaintiff filed an application for DIB on November 22, 2017,[3] alleging a disability onset date of September 1, 2015. Tr. at 155-56. The application was denied initially, Tr. at 49-60, 61, 62, 78-80, and upon reconsideration, Tr. at 63-74, 76, 77, 85-90.

On January 6, 2020, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 32-48. On January 22, 2020, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-27.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief in support of the request. See Tr. at 4-5, 261-62. On September 8, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On November 6, 2020, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred by "not offer[ing] a sufficient justification for rejecting Plaintiff's testimony about his migraines, his anxiety,

---

[3] Although actually completed on November 22, 2017 and dated December 13, 2017, see Tr. at 155, the protective filing date of the application is listed elsewhere in the administrative transcript as October 24, 2017, see, e.g., Tr. at 49.

and his functional limitations." Plaintiff's Memorandum of Law (Doc. No. 18; "Pl.'s Mem."), filed July 1, 2021, at 1; see id. at 11-16. On August 26, 2021, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's argument.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart,

---

[4]        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-26. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since September 1, 2015, the alleged onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: migraines, chronic kidney disease (CKD), myocardial infarction, anxiety, and post-traumatic stress disorder (PTSD)." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform medium work as defined in 20 [C.F.R. §] 404.1567(c) except he is limited to work that requires little to no judgment to do simple duties that can be learned on the job in a short time (up to, and including, 30 days). He is able to deal with changes in a routine work setting and is limited to work settings that do not require production-paced work. He can adequately relate to supervisors with only occasionally coworker and general public contact.

Tr. at 20 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is unable to perform any past relevant work" as a "Stock Clerk" and a "Sales Attendant." Tr. at 25 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("47 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 25 (emphasis and citation omitted), such as "Laundry Worker," "Cleaner," and "Dietary Aide," Tr. at 26. The ALJ concluded Plaintiff "has not been under a disability . . . from September 1, 2015, through the date of th[e D]ecision." Tr. at 26 (emphasis and citation omitted).

## III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial

evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

### A.   Parties' Arguments

Plaintiff contends the ALJ failed to "offer a sufficient justification for rejecting Plaintiff's testimony about his migraines, his anxiety, and his functional limitations."   Pl.'s Mem. at 1; see id. at 11. As to the migraines, Plaintiff argues the record shows he "experiences debilitating migraine headaches." Id. at 14. Plaintiff recognizes, however, that the record also reflects the frequency of the headaches improved over time with Botox injections.   Id. He nevertheless contends the headaches "would cause him to have multiple

absences from the workplace every month." Id. As to the anxiety, Plaintiff states that it "causes greater functional limitations than the ALJ suggested," id., and argues that the ALJ "overlooked mental health evidence showing that Plaintiff's anxiety would limit his ability to keep a regular work schedule," id. at 15. As to the other functional limitations assigned by the ALJ ("medium work" with additional limitations), Plaintiff takes issue with the ALJ's "fail[ure] to provide any analysis to support his conclusion that Plaintiff could perform medium work." Id. at 13. Plaintiff does not, however, point to any particular evidence or alleged limitations, other than the migraines and anxiety, that would result in a more restrictive RFC than the one assigned by the ALJ.   See id.

Responding, Defendant argues the ALJ "was not required to defer to Plaintiff's subjective complaints." Def.'s Mem. at 4. According to Defendant, the ALJ's rejection of the degree of limitation Plaintiff alleged is supported by a "detailed discussion of the medical evidence." Id. at 4-5.

**B.   Applicable Law**

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise

to the claimed pain." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." <u>Holt</u>, 921 F.2d at 1223.

"When evaluating the claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." <u>Davis v. Astrue</u>, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. <u>Wilson</u>, 284 F.3d at 1225; <u>see also</u> <u>Dyer</u>, 395 F.3d at 1210; <u>Marbury v. Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992).

In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." <u>Id.</u> Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record

when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination" (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984))). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)).

## C.  Analysis

The ALJ here found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that

Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 21. The ALJ recognized Plaintiff's treatment for migraines and anxiety, and he summarized in detail Plaintiff's testimony and the pertinent records. Tr. at 21-25.   At the end of the day, the ALJ found that Plaintiff's alleged impairments, including "difficulties interacting with others, anxiety in crowds, headaches, medication side effects, and limited activities of daily living" were adequately addressed in the assigned RFC for medium work with additional mental limitations. Tr. at 25. The ALJ's findings in this regard are supported by substantial evidence.

As to Plaintiff's migraines, there is no doubt that Plaintiff suffers from them and they at times are persistent. See, e.g., Tr. at 344-50, 604-05, 627-30, 635-37, 641-46, 647-50.[5]  But, the ALJ observed that Plaintiff had significant improvement with Botox therapy, Tr. at 22-24, and the record generally supports this observation, see, e.g., Tr. at 735 (October 3, 2019 note documenting "significant relief from prior botox injections since the last visit" in the areas of "pain relief . . . , duration, frequency, and intensity"); Tr. at 757-58 (July 18, 2019 note stating Botox injections only lasted 5 out of 12 days they were supposed to cover); Tr. at 769-70 (June 27, 2019 note documenting 8-14

[5]     A number of medical records are duplicated two or more times in the administrative transcript. Citations do not include duplicate records.

headaches per month with more at the end of the 12 week Botox cycle); Tr. at 839 (July 5, 2018 note documenting 8-14 headaches per month, down from 20-30, on Botox); Tr. at 884-85 (April 5, 2018 note documenting similar numbers); Tr. at 440-41 (January 4, 2018 note reflecting reduction of migraines with Botox); Tr. at 310 (October 23, 2017 note reflecting good results with Botox injections; October 5, 2017 note reflecting reduction of migraine episodes with Botox and 3/10 pain); Tr. at 495-99 (June 29, 2017 note reflecting good results with Botox); Tr. at 555 (December 23, 2016 note reflecting good results with Botox, 2/10 pain); Tr. at 570 (December 12, 2016 note reflecting good results with Botox, 1-3 migraines a week down from up to 6); <u>but see</u> Tr. at 757 (July 25, 2019 note stating that Plaintiff was still completely disabled 3 days a week with migraines, "which would make holding down a job impossible"). The record contains substantial evidence from which to conclude that Plaintiff's migraine headaches improved sufficiently when he was on Botox therapy so as not to be disabling.

As to Plaintiff's anxiety, again, the record reflects that Plaintiff suffers from anxiety that that affects him socially and affects his ability to sleep. <u>See,</u> <u>e.g.</u>, Tr. at 793-94 (February 22, 2019 note documenting Plaintiff's request to resume anxiety medications); Tr. at 666-68 (March 22, 2018 note reflecting Plaintiff's report of having "high anxiety around people and public places"); Tr. at 678-80 (February 2, 2018 note documenting Plaintiff's report of "ventur[ing]

out to attend church" but indicating it was "somewhat overwhelming, as it was a large crowd of people he did not know"); Tr. at 301 (November 7, 2017 note indicating "any social anxiety is not really a priority for him, as much as seeking relief from his headaches"); Tr. at 305-06 (November 3, 2017 note reflecting that Plaintiff stopped taking his medications because he felt they caused a road rage incident, but also reflecting he "feel[s] disabled by his anxiety and irritability, and avoids contact with everyone except for his parents and his healthcare providers"); Tr. at 317-18 (September 20, 2017 note reflecting self-isolation in home with new kitten, thinking about dying frequently, and feeling disabled by anxiety and irritability); Tr. at 506-09 (Plaintiff indicating on May 9, 2017 his anxiety and irritability were reduced following taking the medication Sertraline; provider adjusting medications for continued racing thoughts); Tr. at 512-13 (April 11, 2017 note documenting Plaintiff reporting he stays at home and "has no intention of trying to go back to work secondary to severe anxiety when around people for any length of time"); Tr. at 535-36 (March 13, 2017 note documenting Plaintiff's report of isolating in apartment and irritability); Tr. at 350-52 (September 11, 2015 note following consultation for anxiety in which Plaintiff characterized it is "social anxiety" and discussed suicidal thoughts); Tr. at 353-58 (July 13, 2015 note following consultation for suicidal ideation and anxiety). Plaintiff even purports to have lost a job due to "many episodes of conflict with patrons." Tr. at 550.

- 12 -

The ALJ, however, recognized the bulk of the records pertaining to Plaintiff's anxiety and found that it is not as severe as alleged, particularly in light of Plaintiff refusing to get counseling at the Veteran's Center after being encouraged many times to do so.   See Tr. at 22-24. This finding is supported by substantial evidence. See, e.g., Tr. at 306, 307, 318, 321, 486, 506, 512, 516, 668, 679, 862, 899-901 (numerous notes documenting no attempts to obtain therapy despite instructions and encouragement). Although records from late in the administrative process reflect frequent changing of medications to attempt to reduce Plaintiff's symptomology, see, e.g., Tr. at 738-66, 780-86, 899-901, these changes occurred after a significant period of Plaintiff not being properly treated for his anxiety because he discontinued his medications on his own. Overall, the undersigned cannot disturb the ALJ's findings regarding Plaintiff's anxiety without impermissibly reweighing the evidence.

Because the ALJ's findings on the severity of Plaintiff's migraines and anxiety are supported by substantial evidence, the ALJ was not required to provide any greater limitations in the RFC than he did regarding those impairments. Finally, as to Plaintiff taking issue with the balance of the RFC findings, Plaintiff does not point to anything specific (other than those already discussed in detail) that would limit his ability to work beyond what the ALJ assigned. Accordingly, the undersigned finds the RFC is supported by substantial evidence.

## V.   Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on December 10, 2021.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record